PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* LUIS MILLÁN, Defendant and Appellant.

No. 2545.   Argued November 10, 1925.—Decided July 29, 1926.

*Buenaventura Esteves* for the appellant.   *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

Luis Millán was charged with having raped Elisa Vélez, a girl under 14 years of age who was not his wife.   It appears from the evidence that at about nine o'clock in the evening of one of the days of the month of November, 1923, the girl Elisa Vélez left the home of her godmother, Rosa

Marrero, where she was living, because the latter had scolded her, intending to go to the house of an aunt of hers. As she was walking along a country road of a ward of Lares she was met by Luis Millán, Francisco Acevedo, Adelis Hernández and Luis Acevedo, who were traveling on a truck, and they took her up with them. When the truck reached the place of its destination a little later Luis Millán let the girl down and carried her off to a small pasture where he had carnal contact with her. Thereafter Millán took the girl back to the truck, where he left her and then went away. That night Francisco Acevedo and Adelis Hernández had carnal intercourse with Elisa Vélez on the truck.

██ Luis Millán was convicted of the crime of rape, whereupon he took this appeal from the judgment and from the ruling denying him a new trial, alleging in support of his appeal that the court erred in allowing the district attorney to put leading questions to Elisa Vélez on direct examination at the trial in violation of section 153 of the Law of Evidence. But as the appellant does not point out those questions, we shall not search the record for such questions as he may consider leading. The only alleged leading question asked witness Adelis Hernández was whether "she was willing to go." That witness was then testifying that Luis Millán assisted the girl down from the truck and took her to a small pasture, and although the question may be leading, it is not prejudicial to the accused, for as he was charged with rape on the ground that the girl was under 14 years of age, it was immaterial to the case whether or not the girl was willing to go with him.

██ The second assignment is that the trial court erred in allowing witness Domingo Quiles to repeat to the jury certain remarks made by Francisco Acevedo. These remarks were that . . . (consisting, in the opinion of the translator, of unprintable vulgarities which the degenerate speaker considered humorous) and were made, said the witness, by Francisco Acevedo in a loud tone of voice when

the accused was near and could hear them, adding that the accused did hear them and smiled.

The appellant contends that the remarks made by Acevedo and repeated by Quiles were not admissible, because they did not refer to him and were not made in his immediate presence. However, the record shows that the remarks were made by Acevedo in a loud tone of voice; that the appellant was near; that he could hear them, and that he smiled when they were made; consequently it can not be held that Acevedo's remarks were not made in the appellant's immediate presence. It is true that the speaker used the plural and the words did not refer to himself alone, but Millán made no objection thereto, and, on the contrary, smiled, which may be taken as an acquiescence. And the said remarks made by Acevedo, who was also accused and convicted of raping the girl, were admissible also because they were not lacking in connection with the appellant's demeanor when they were made by Acevedo. In the case of *People* v. *Mallon,* 103 Cal. 514, where two witnesses were permitted to testify to certain statements made by Foran, who had been accused with Mallon of an attempt to commit robbery, the court held as follows:

"This testimony, standing by itself and without any connection with the conduct of appellant when the alleged statements were made, would, no doubt, have been clearly hearsay and inadmissible. But it is established law that while a statement made in the presence of the accused is not admissible as being itself evidence of any fact narrated in such statement it is admissible, primarily, for the purpose of showing that the accused acquiesced in the statement either by express assent, or by silence, or by such conduct as fairly implied assent. (*People* v. *McCrea,* 32 Cal. 98; *People* v. *Estrado,* 49 Cal. 171.) Such testimony should, no doubt, be received guardedly; if not followed by any proof of the conduct of the accused it should be stricken out; and if requested by the defendant's counsel (which was not done in the case at bar) the court should instruct the jury that such statement was limited as evidence to the purpose above indicated. But it is not error to admit such statements in the first instance. In the case at bar we think that it clearly appears what

the conduct of the defendant was when Foran was making his statements, and that he did not deny them. During the testimony of Crockett as to said statements, and after an objection had been made by defendant's counsel, the court said: 'I assume that what the defendant at bar said and did in the course of that conversation will come out'; and the court then asked the witness: 'What did the defendant here on trial—what did he say?' to which the witness responded: 'He didn't say anything when he told him that,' and the witness afterwards said: 'We were all together in one group. The defendant, Mallon, said nothing.' The witness Donovan, after testifying to certain statements made by Foran to defendant, said that 'he didn't answer at all.' And, further, that when the witness asked the defendant, 'you were there?' he replied: 'Do you suppose I was a damn fool to tell you I was there?' "

■ Another of the appellant's contentions is that as there was no positive proof that the birth of Elisa Vélez was not recorded in the civil registry of Lares, because of the insufficiency of the certificate of the registry to the effect that it was not recorded and also of the certificate of the parish priest of Lares to the effect that a record of her baptism did not appear in the parish books, which the appellant considers the best evidence of the age of the girl according to section 320 of the Civil Code, the testimony of witnesses as secondary evidence to prove the age of the girl should not have been admitted. However, in the case of *People* v. *Díaz*, 19 P.R.R. 497, a case of voluntary manslaughter, the same question was raised and the Supreme Court held that the testimony of the physicians who saw the corpse of the victim was the best evidence of his death independently of any certificate of the civil registry. In the case of *People* v. *Ruiz*, 31 P.R.R. 297, a case of assault and battery, that same point was raised and we held that section 320 of the Civil Code was not applicable to cases of that nature and that the testimony of witnesses was admissible to prove that the accused was over 21 years of age. In Louisiana, where there is a Civil Code like ours, in the case of *State* v. *Romero*, 117 La. 1603, 42 So. 482, involving a

crime committed with a woman under 16 years of age, it is said in the syllabus that the testimony of witnesses as to the age of the woman is not secondary evidence, and that it is not such secondary evidence because of the fact that there may exist a record of her baptism in some registry. In view of what has been stated, we conclude that the assignment of error is without merit and that the testimony of witnesses was sufficient to show that the victim in this case was under the the age of 14 years when the crime charged against the appellant was committed. Dr. Sein testified that from the examination made of the girl by him he concluded that she was from 12 to 15 years of age, but he could not assert that she was not under 14 years of age. Witness Rosa Marrero testified that she came for the first time to this Island in 1910, being married to Celedonio Marrero, and went to live in Mirasol ward, Lares, on the property of her husband; that very near the house where she lived there lived the parents of Elisa, who was born in May of the following year, 1911, and was baptized on the property by the priest of Lares at the same time that another girl named Prudencia Ruiz, who was born there a month before, was also baptized, and that she was the godmother of both of the girls. Juana Rodríguez also testified that at that time she was living in the house of Celedonio Marrero and acted as midwife at the birth of Elisa, and a month before at the birth of Prudencia Ruiz; that Elisa was born in May, 1911, which fact she remembered by reason of a sale that she made at the time. This testimony was corroborated by a certificate from the civil registry to the effect that Prudencia Ruiz was born April 28, 1911, and consequently Elisa was only 12 years of age in 1923, the year in which the alleged rape was committed.

■ The fourth assignment is that the court erred in refusing to allow a certain cross-question to be put to a witness, and in overruling the defendant's motion for a directed verdict of acquittal. Witness Juana Rodríguez was asked by the defense whether she remembered when the

San Ciriaco hurricane occurred after having testified that she had gone to live in Mirasol ward, Lares, at that time, and was also asked in what year the earthquakes had occurred in this Island. These cross-questions were not permitted and it is now urged that the purpose was to demonstrate that her testimony was framed and her credibility doubtful. That witness had testified before that she had gone to live in Mirasol ward, Lares, in the year of the San Ciriaco hurricane, which occurred on the 8th of August, but she did not remember the year, and having said that she testified in another case against Francisco Acevedo, she was asked whether she remembered that she could not say when the San Ciriaco hurricane occurred. The district attorney objected to that question and the objection was sustained by the court, exception being taken to the ruling because the defense wanted to know why the witness said that it was on the 8th of August. It is a historical fact of which we take judicial notice that the hurricane known as San Ciriaco occurred on the 8th of August, 1899, and as the witness had already said that she did not remember the year, but did remember the month and day, there was no error in not allowing the question, for it had been answered before. The cross-question concerning the earthquakes was allowed by the court and the witness answered that she did not remember in what year they occurred.

The motion for a directed verdict for the acquittal of the accused was on the grounds that the age of the victim had not been proved as required by law; that her testimony and that of witness Adelis Hernández, whom the appellant considers an accomplice, were not corroborated to the extent of connecting the accused with the crime with which he is charged, and that the evidence introduced by the district attorney, taken as a whole, would not support a verdict of conviction.

We have said before that oral evidence was admissible to prove the age of the girl. The testimony of Elisa Vélez

was corroborated by Dr. Sein with respect to her recent defloration and by the testimony of Adelis Hernández that Luis Millán was the first who had carnal intercourse with her on that night. As regards the question of whether the testimony of that witness was corroborated, if he were an accomplice, we may say that it was, because another witness, Domingo Quiles, testified that he heard Francisco Acevedo, in the immediate presence of Millán, boast of what he had done that night with Elisa. The evidence as a whole was sufficient to be submitted to the jury without instruction for a verdict of acquittal, for, as we have said, it connected the accused with the crime charged, the testimony of Elisa Vélez being clear and specific and not vague and weak, as urged by the appellant.

The fifth assignment is that the court erred in charging the jury as follows:

"In this particular case submitted to your consideration you will have to decide whether the testimony of Elisa Vélez has been corroborated by that of Adelis Hernández; whether the presence of Adelis Hernández in Bartolo ward at daybreak of the day on which the act was committed is a corroboration of his testimony that he was present; whether the testimony of Domingo Quiles, the barber, referring to that of the other co-defendant, Francisco Acevedo, and whether or not Millan's smile on hearing that, instead of protesting and denying the fact, is a corroboration; and, finally, whether or not the testimony of Dr. Sein is a corroboration of the fact of defloration. . . . The district attorney has introduced evidence to the effect that the primary evidence does not exist consisting of negative certificates, first from the civil registry, and then from the church, and this being proved, he has proved, or has endeavored to prove, with the testimony of Rosa Marrero and that of the midwife, Juana Rodríguez Ramos, the age of Elisa Vélez. On weighing this evidence you will determine whether it is sufficient to convince you beyond all reasonable doubt of the fact that this girl was under the age of 14 years. If all these points are proved, then you have no alternative but to find a verdict of guilty against the accused."

These charges are not erroneous, nor does the appellant say why they are, but urges that when the judge refers to

the testimony of Domingo Quiles and the smile of Millán he assumes that said remarks are true and proved, thereby invading the functions of the jury; but what the court did was to refer to the remarks heard by the jury in order to instruct them to find whether the testimony of Elisa Vélez had been corroborated. The same thing may be said as to the second part of the charges copied, wherein the court does not assume that the age of the victim was proved, but instructs the jury to weigh the evidence and determine whether it is sufficient to convince them beyond all reasonable doubt that the girl was under 14 years of age.

The penultimate assignment is that the court erred in refusing to give to the jury certain instructions asked for by the defense.

Of the eight instructions asked for by counsel for the defense the court gave to the jury the first four and denied the other four, which are as follows:

"Fifth. That according to section 253 of the Code of Criminal Procedure, a conviction can not be had on the testimony of an accomplice, unless he be corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof. Sixth. That the jury is the sole judge to determine whether or not a witness is an accomplice. Seventh. That in these cases the witness (accomplice) acts under the promise of immunity, and though it be true that this promise is always denied by the accomplice, the existence of the same is always suspected. Eighth. That the testimony of an accomplice in a prosecution for rape can not serve to corroborate the testimony of the aggrieved person, nor is the testimony of the latter sufficient to corroborate the testimony of the accomplice."

All of the instructions denied are based on the assumption that Adelis Hernández was an accomplice of Luis Millán in the crime with which the latter is charged; that section 253 of the Code of Criminal Procedure provides that no conviction can be had on the testimony of an accomplice,

unless it be corroborated by some other evidence which, of itself and without the aid of the accomplice's testimony, tends to show the connection of the accused with the crime, the corroboration not being sufficient if it merely shows the commission of the crime or the circumstances thereof. In this case no instructions were given to the jury that they were to consider whether Adelis Hernández was an accomplice, and if so, whether or not his testimony had been corroborated, and that it was for the jury to decide whether he was an accomplice. Was that witness an accomplice of the accused so as to make it necessary to give the jury the instructions asked for and denied? An accomplice is a person connected with others in the commission of a crime, and we can not find in the evidence the slightest indication of any understanding between Luis Millán and Adelis Hernández for the commission of the crime with which Millán is charged, nor of any assistance given to Millán by Hernández. What appears to have happened is that the men who were in the truck took up into the truck on the road a girl named Elisa Vélez; that when the truck stopped at Bartolo ward late in the evening Luis Acevedo went away and afterwards Millán took the girl down from the truck and carried her to a place where he had intercourse with her, then taking her back to the truck and after leaving her on the truck, went away; that on the truck Francisco Acevedo and Adelis Hernández remained until daybreak, and both of them had carnal contact with the girl, first Acevedo and then Hernández, these being facts which, if true, constitute three independent crimes of rape, with no connection among them, wherefore while each of these men may be charged with the crime of rape, Acevedo and Hernández could not be charged with the crime perpetrated by Millán, the distinction being a means for determining whether or not a person is an accomplice of another. 16 C. J. 671. And as whenever the facts with respect to the participation of a witness in the crime charged against the accused are

clear and unquestionable, it is for the court to determine whether or not the said witness is an accomplice (16 C. J. 677, par. 1370), it being clear in this case that Adelis Hernández was not an accomplice of Millán, the trial court committed no error in denying the instructions referring to complicity.

In view of the reasons herein given the court holds that the judgment appealed from is not contrary to law and the evidence, and it should be affirmed, as well as the ruling denying the motion for a new trial.

Justices Wolf and Hutchison dissented.